**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT CHATTANOOGA**

TIMOTHY EVANS,                    )
                                 )
        Petitioner,               )
                                 )
v.                               )        No.    1:18-CV-177-HSM-CHS
                                 )
KEN HUTCHINSON, Warden,          )
                                 )
        Respondent.               )

<u>**MEMORANDUM OPINION**</u>

Petitioner Timothy Evans, a Tennessee inmate proceeding pro se, has filed a federal habeas

petition pursuant to 28 U.S.C. § 2254 challenging his Tennessee judgments of conviction for one

count of conspiracy to commit first-degree premeditated murder, one count of first-degree

premeditated murder, and one count of carrying a dangerous weapon. Having considered the

submissions of the parties, the State-court record, and the law applicable to Petitioner's claims, the

Court finds that the petition should be denied.

**I.      SUMMARY OF RELEVANT EVIDENCE & PROCEDURAL HISTORY**

Petitioner Timothy Evans was a seventeen-year-old member of the Skyline Bloods gang

when he shot and killed Adrian Patton in Chattanooga, Tennessee, on June 13, 2006 [Doc. 11-1 p.

5; Doc. 11-8 p. 111]. Petitioner, along with Michael Daniels, a higher-ranking member of the

Skyline Bloods, were subsequently indicted on murder, conspiracy, and firearms charges [Doc.

11-1 p. 4-13]. The State moved to consolidate the trials, to which the defendants both objected by

filing motions to sever [Doc. 11-1 p. 18; Doc. 11-3]. After a hearing, however, the trial court

denied the motions to sever, and the defendants proceeded jointly to trial [Doc. 11-1 p. 25; Doc.

11-3].

At trial, the State presented evidence that Daniels believed Patton had shot at the home of Daniels' sister [*See, e.g.*, Doc. 11-6 p. 108]. Daniels arranged a meeting with Patton, and Patton arrived at the meeting in his truck [*Id*. at 105-07]. Daniels and another individual, Darius Sneed, went to the truck's window and spoke with Patton while Petitioner stood at the back of Patton's truck [*See, e.g.*, Doc. 11-7 p. 103-04, 106]. After a short discussion with Patton, Daniels walked to the back of the truck and told Petitioner to shoot Patton [Doc. 11-8 p. 119]. Petitioner walked to the front of the truck and shot Patton, hitting him six times, and fled the scene [Doc. 11-7 p. 109-11; Doc. 11-8 p. 104]. The State also introduced Daniels' redacted statement to police [Doc. 11-8 p. 72-74]. The redacted statement did not mention Petitioner's involvement in the murder [*Id.*].

Petitioner testified in his own defense [Doc. 11-8 p. 110-24]. After talking to Daniels and others, but before the meeting with Patton, Petitioner "figured that something was going to happen" [Doc. 11-9 p. 19]. Based on this information, Petitioner loaded his gun using a bandana to keep his fingerprints off of the bullets [Doc. 11-8 p. 135-36]. Petitioner stated during his meeting with Patton, Daniels came to the back of Patton's truck while reaching for his gun and ordered Petitioner to shoot Patton [*Id*. at 119]. Petitioner stated that while he did not have an issue with Patton, he had "no choice" but to kill Patton because, as a lesser-ranked member of his gang, Daniels could punish him for not following orders [*Id*.]. However, on cross-examination, Petitioner admitted that he would kill because of his loyalty toward his co-defendant [*Id*. at 148-49]. The jury convicted Petitioner as charged, and he received an effective life sentence for his convictions [Doc. 11-1 p. 56-58].

Petitioner's convictions were affirmed on appeal. *State v. Evans*, E2009-01627-CCA-R3-CD, 2011 WL 3667722, at *1 (Tenn. Crim. App. Aug. 22, 2011), *perm. app. dismissed* (Tenn.

Nov. 17, 2011) ("*Evans I*"). The Tennessee Supreme Court dismissed Petitioner's untimely application for discretionary review. [Doc. 11-19].

Petitioner filed a pro se petition for post-conviction relief in the trial court [Doc. 11-20 p. 38-47]. Thereafter, with the assistance of appointed counsel, he filed an amended petition for post-conviction relief [*Id*. at 54-56]. One of the claims in the amended petition alleged that trial counsel rendered ineffective assistance in failing "to effectively present a defense of duress" [*Id*. at 55]. The trial court held an evidentiary hearing on the petitions [*See* Doc. 11-23]. At the hearing, trial counsel testified that he raised the defense of duress at trial, and that the trial court had instructed the jury on duress [Doc. 11-23 p. 9-10, 16-18]. Trial counsel testified that he decided not to present a psychological expert for Petitioner's duress defense because he "did not feel it would be helpful," and that he believed Petitioner's testimony concerning duress "was the most powerful" [*Id*. at 18]. Trial counsel recalled speaking to Petitioner about his trial testimony and about "what his primary defense was going to be, which in this case was duress" [*Id*. at 19].

The post-conviction trial court denied relief [Doc. 11-20 p. 59-90]. In its order, the court specifically determined "whether trial counsel was ineffective in failing to effectively present a defense of duress or in failing to call a psychological expert to testify on [Petitioner]'s behalf about the effect of [the co-defendant's] order to [Petitioner] to shoot the victim" [Doc. 11-20 p. 81]. The trial court described how trial counsel attempted to effectively raise the defense of duress and determined that the decision not to call a psychological expert was a strategic one reached "after careful consideration" [Doc. 11-20 p. 81-84]. The Tennessee Court of Criminal Appeals ("TCCA") affirmed the decision of the post-conviction trial court. *Evans v. State*, No. E2017-00400-CCA-R3-PC, 2018 WL 1433396, at *1 (Tenn. Crim. App. Mar. 22, 2018), *perm. app. denied* (Tenn. July 19, 2018) ("*Evans II*"). The Tennessee Supreme Court denied discretionary review [Doc. 11-29].

Thereafter, Petitioner timely filed the instant petition for writ of habeas corpus raising the following claims, as paraphrased by the Court:

Ground I:     Ineffective assistance of counsel.
1.     Trial counsel failed to argue Petitioner's defense of duress;
2.     Trial counsel failed to have Petitioner evaluated to present an insanity or diminished capacity defense;
3.     Trial counsel failed to call a psychological expert to support Petitioner's duress defense;
4.     Trial counsel failed to adequately prepare Petitioner for cross-examination; and
5.     Trial counsel deprived Petitioner of direct appellate review of his duress defense by failing to include the appropriate part of the trial transcript in the appellate records.

Ground II:    Insufficient evidence.

Ground III:   The trial court erred in refusing to grant the motions to sever.

Ground IV:    The trial court erred in "using extreme and unnecessary security measures that prejudiced the jury against [Petitioner]."

Ground V:     The trial court erred in failing to grant Petitioner's motion for a new trial where the State's gang expert committed perjury.

[Doc. 2]. The Court ordered Respondent to respond to the petition, and Respondent complied by filing an answer on September 25, 2018 [Doc. 12]. Petitioner sought and obtained an extension of time within which to file a reply to the answer, but he failed to submit any additional pleadings for the Court's review [*See, e.g.,* Docs. 13-14]. This matter is now ripe for review.

## II.    LEGAL STANDARD

The Court's review of the instant petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which prevents the grant of federal habeas relief on any claim adjudicated on the merits in a State court unless that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent; or (2) resulted in a decision based on an unreasonable determination of

facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(1) & (2); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

Federal habeas relief may be granted under the "contrary to" clause where the State court (1) arrives at a conclusion opposite that reached by the Supreme Court on a question of law; or (2) decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal court may grant relief where the State court applies the correct legal principle to the facts in an unreasonable manner. *See id.* at 407-08; *Brown v. Payton*, 544 U.S. 133, 141 (2005). Whether a decision is "unreasonable" is an objective inquiry; it does not turn on whether the decision is merely incorrect. *See Schriro*, 550 U.S. at 473 ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable − a substantially higher threshold."); *Williams*, 529 U.S. at 410-11. This standard will allow relief on a federal claim decided on its merits in State court only where the petitioner demonstrates that the State ruling "was so lacking in justification that there was an error understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

When evaluating the evidence presented in State court, a federal habeas court presumes the correctness of the State-court's factual findings unless the petitioner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Additionally, a federal habeas court must defer to the State-court findings on credibility because it "is not as well positioned as the trial court is to make credibility determinations." *Miller-El v. Cockrell*, 537 U.S. 322, 339 (2003). While reasonable minds may differ regarding credibility, such disagreement will not supersede the trial court's credibility determinations on federal habeas review. *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). Rather, a habeas court cannot disturb a trial court's credibility determination unless

evidence is presented that is "too powerful to conclude anything" other than an erroneous determination by the trial court. *Miller-El v. Dretke*, 545 U.S. 231, 265 (2005).

The doctrine of procedural default also limits federal habeas review. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (holding prisoner's procedural default forfeits his federal habeas claim). A procedural default exists in two circumstances: (1) where the petitioner fails to exhaust all of his available State remedies, and the State court to which he would be required to litigate the matter would now find the claims procedurally barred, and (2) where a State court clearly and expressly bases its dismissal of a claim on a State procedural rule, and that rule provides an independent and adequate basis for the dismissal. *See, e.g., Coleman v. Thompson*, 501 U.S. 722, 731-32, 735 n.1 (1991). A procedural default may be circumvented, allowing federal habeas review of the claim, only where the prisoner can show cause and actual prejudice for the default, or that a failure to address the merits of the claim would result in a fundamental miscarriage of justice. *Id.* at 750; *see also Wainwright v. Sykes*, 433 U.S. 72, 87, 90-91 (1977).

"Cause" is established where a petitioner can show some objective external factor impeded defense counsel's ability to comply with the State's procedural rules, or that his trial counsel rendered ineffective assistance. *See id.* at 753. The prejudice demonstrated to overcome the default must be actual, not merely a possibility of prejudice. *See Maupin v. Smith*, 785 F.2d 135, 139 (6th Cir. 1986) (citations omitted); *see also United States v. Frady*, 456 U.S. 152, 170 (1982) (holding prejudice showing requires petitioner to bear "the burden of showing, not merely that errors [in the proceeding] created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire [proceeding] with error of constitutional dimension") (emphasis in original). A fundamental miscarriage of justice of occurs "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

## III.    DISCUSSION

### A.    Ineffective Assistance of Counsel

Petitioner has alleged four properly-exhausted claims of ineffective assistance of trial counsel, Claims I(2)-(5).  Claims of ineffective assistance of counsel are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a habeas petitioner to satisfy a two-prong test to warrant federal habeas corpus relief: (1) he must demonstrate constitutionally deficient performance, and (2) he must demonstrate actual prejudice as a result of such ineffective assistance.  *Strickland*, 466 U.S. 668 (1984).  Deficiency is established when a petitioner can demonstrate that counsel's performance falls below an objective standard of reasonableness as measured by professional norms, such that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment.  *Id*. at 687-88.  A reviewing court's scrutiny is to be highly deferential of counsel's performance, with an effort to "eliminate the distorting effects of hindsight."  *Id*. at 689.  In fact, counsel is to be afforded a presumption that his actions were the product of "sound trial strategy" and undertaken with the exercise of reasonable professional judgment.  *Id*.

Prejudice is established when the petitioner can demonstrate to a reasonable probability that the result of the proceedings would have been different but for the challenged conduct, thereby undermining confidence in the reliability of the outcome.  *Id.* at 694.  However, an error, even if professionally unreasonable, does not warrant setting aside the judgment if it had no effect on the judgment.  *Id.* at 691.

On habeas review, the issue for the district court is not whether the *Strickland* standard is met, but rather, whether the State-court's decision that *Strickland* was not met warrants relief under AEDPA standards.  *See Harrington v. Richter*, 562 U.S. 86, 105 (2011) ("When 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is

any reasonable argument that counsel satisfied *Strickland*'s deferential standard."). Accordingly, when a *Strickland* claim has been rejected on its merits by a State court, a petitioner "must demonstrate that it was necessarily unreasonable" for the State court to rule as it did in order to obtain federal habeas relief. *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011).

### 1. Evaluation for insanity/diminished capacity defense

In Claim I(2), Petitioner argues that trial counsel provided ineffective assistance when he failed to have Petitioner evaluated in order to support a defense of insanity or diminished capacity [Doc. 2 p. 4]. Petitioner raised this issue in his post-conviction appeal, where it was rejected by the TCCA. *Evans II*, 2018 WL 1433396, at *4.

At his post-conviction evidentiary hearing, Petitioner did not offer any evidence that he suffered from any mental condition that would have warranted a mental health evaluation [*See, generally*, Doc. 11-23]. Additionally, trial counsel testified that he "spoke to [Petitioner] numerous times and there was nothing – he understood what was going on, he was able to go ahead and engage and participate in his defense and knew what was going on during that time" [*Id*. at 9]. In the absence of any expert proof as to what mental health evidence should have been presented, the Court finds that the TCCA reasonably decided Petitioner failed to establish prejudice at the evidentiary hearing. Petitioner has not presented any allegations challenging the established facts, and his substantive argument in support of this claim consists of a mere conclusory allegation that is insufficient to warrant habeas relief. *See Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003) ("Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief."). Therefore, relief on Claim I(2) will be denied.

### 2. Psychological expert for duress defense

Claim I(3) alleges counsel's ineffectiveness based on his failure to call a psychological expert to support Petitioner's duress defense [Doc. 2 p. 4]. The TCCA denied relief on this claim

on post-conviction review. *Evans II*, 2018 WL 1433396, at *3-4. The TCCA found Petitioner failed to support his claim through expert testimony at his post-conviction evidentiary hearing. *Id.* at *4. The court found that the lack of evidence beyond Petitioner's own allegation failed to establish a reasonable probability of a different trial outcome. *Id.*

At the post-conviction evidentiary hearing, trial counsel testified that he believed Petitioner's testimony concerning his duress "was the most powerful," and that counsel "did not feel it would be helpful" to call a psychological expert to testify about duress because the expert could not testify about whether Petitioner was actually under duress at the time he acted [Doc. 11-23 p. 18]. Therefore, the Court finds that trial counsel considered the option but reasonably decided against it, a strategic decision that is now "virtually unchallengeable." *Strickland*, 466 U.S. at 690. Additionally, Petitioner failed to offer any proof at his evidentiary hearing that an expert witness would have offered favorable testimony, and therefore, it was reasonable for the TCCA to conclude that he had not established prejudice.

The Court finds that Petitioner has not presented any allegations challenging the established facts, and his substantive argument in support of this claim consists of a mere conclusory allegation that is insufficient to warrant habeas relief. *See Prince*, 78 F. App'x at 442. Therefore, relief on Claim I(3) will be denied.

### 3. Prepare for cross-examination

Petitioner next claims that trial counsel rendered ineffective assistance in failing to adequately prepare him to testify on cross-examination [Doc. 2 p. 4]. The TCCA considered and rejected this claim on appeal of the post-conviction court's decision, stating:

> With respect to the Petitioner's claim that trial counsel failed to adequately prepare him for cross-examination, trial counsel testified that he and his investigator spoke to the Petitioner about testifying at trial and "explained to him what [they] were needing and what his primary defense was going to be." More importantly, we note that the Post–Conviction Procedure Act requires a petitioner to testify at the post-conviction hearing "if the petition raises substantial questions of fact as to events

in which the petitioner participated." Tenn. Code Ann. § 40–30–110(a); *see also* Tenn. Sup. Ct. R. 28, § 8(C)(1)(b) (stating the same). Because the Petitioner did not testify at the post-conviction hearing, he has failed to establish his factual allegations with respect to this issue by clear and convincing evidence. Therefore, the post-conviction court did not err in denying relief on this issue.

*Evans II*, 2018 WL 1433396, at *4.

The record confirms that trial counsel testified at the evidentiary hearing that he explained to Petitioner "what we were needing and what his primary defense was going to be, which in this case was duress" [Doc. 11-23 p. 19]. Therefore, counsel spoke with Petitioner before he testified, and the determination that trial counsel's performance was adequate is not a decision "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (citing *Richter*, 562 U.S. at 103)).

Additionally, the record reflects that Petitioner did not testify at his evidentiary hearing, which deprived the State courts of any evaluation of the factual allegations underlying his ineffective assistance claim [*See, generally*, Doc. 11-23]. Consequently, the TCCA's determination that Petitioner failed to establish prejudice is a reasonable adjudication. Petitioner does not challenge the factual bases for the TCCA's adjudication, and his conclusory allegation that counsel rendered ineffective assistance concerning the cross-examination preparation is insufficient to warrant habeas relief. *See Prince*, 78 F. App'x at 442. Therefore, relief on Claim I(4) will be denied.

### 4. Transcript on appeal

In Claim I(5), Petitioner contends that his direct appellate counsel provided ineffective assistance by failing to include in the appellate record appropriate parts of the transcript that would allow review of his duress defense [Doc. 2 p. 4]. The TCCA addressed this claim as follows:

Finally, our opinion on direct appeal belies the Petitioner's claim that this court "refus[ed]" to review [his] duress defense" because certain portions of the trial

transcript were not included in the appellate record. A contention that the trier of fact erred in rejecting a defendant's duress defense is a challenge to the sufficiency of the convicting evidence. *See State v. Malcolm H. Jones*, No. E2011–02082–CCA–R3–CD, 2012 WL 6176770, at *3–5 (Tenn. Crim. App. Dec. 11, 2012). The Petitioner raised the issue of the sufficiency of the evidence on direct appeal, and this court held that the evidence was sufficient to sustain the Petitioner's convictions. *Evans*, 2011 WL 3667722, at *9–11.

In a footnote during the analysis of whether the trial court erred in denying the Petitioner's severance motion, the opinion states "the record does not reflect that [the Petitioner] formally argued a defense of duress ... or that the trial court instructed the jury on the defense" because "the opening statements, the closing arguments, and the trial court's jury instruction [were] not in the appellate record." *Evans*, 2011 WL 3667722, at *12 n.3. However, this footnote was in reference to the Petitioner's argument that he and the co-defendant had mutually antagonistic defenses. *Id*. at *12. Nevertheless, this court affirmed the trial court's denial of the severance motion on the merits. *Id*. Accordingly, we conclude that this issue is without merit.

*Evans II*, 2018 WL 1433396, at *5.

On direct appeal, the TCCA held that the evidence was sufficient to convict Petitioner of each of his offenses and pointed to various facts that demonstrated Petitioner's premeditated killing and conspiring with his co-defendant to commit murder. *Evans I,* 2011 WL 3667722, at *10. The TCCA also noted that, "[a]rguably, [Petitioner]'s distress after the killing weighs against a finding of premeditation. However, in the light most favorable to the State, [Petitioner] was distraught about killing the victim because he had learned the victim was Sneed's cousin, not because he had shot an innocent person." *Id*. Accordingly, the TCCA did evaluate Petitioner's duress claim on direct review, and thus, counsel's performance in appellate proceedings did not prejudice Petitioner.

Moreover, appellate counsel's performance was not objectively deficient, because the trial transcript records Petitioner's testimony that attempts to prove he was under duress when he murdered Patton [*See* Doc. 11-8 p. 110-150; Doc. 11-9 p. 6-27]. In fact, the TCCA recited Petitioner's testimony that Petitioner had "no choice" but to kill Patton, and it recounted testimony

11

regarding the gang's hierarchy and a member's power to command other members to commit certain acts. *Evans I*, 2011 WL 3667722, at *1-8. Accordingly, Petitioner's duress defense was fully analyzed on direct appeal, and he has not demonstrated that the rejection of his ineffective assistance of appellate counsel claim warrants relief.

In sum, having reviewed all of Petitioner's properly exhausted ineffective assistance of counsel claims, the Court finds that Petitioner has not demonstrated that the decision rejecting these claims is contrary to, or based on an unreasonable application of, *Strickland* and its progeny, or that the rejection of these claims was based on an unreasonable determination of facts in light of the evidence presented.

### B.     Insufficient Evidence

In Claim II, Petitioner argues that the TCCA contradicted or unreasonably applied Supreme Court precedent in determining that the evidence presented at trial is sufficient to support his convictions for first-degree premeditated murder and conspiracy to commit first-degree premeditated murder [Doc. 2 p. 4].[1] Petitioner argues that the State failed to establish premeditation "because the proof shows that the victim's death was not planned and occurred suddenly" and he was under duress from his co-defendant to commit the murder [Doc. 2 p. 4; Doc. 3 p. 2-4].

A challenge to the sufficiency of the evidence is governed by the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), which allows a reviewing court to set aside a verdict on the basis of insufficient evidence only if, "after viewing the evidence in the light most favorable to the prosecution," no "rational trier of fact could have found the essential elements of the crime

---

[1] Petitioner does not appear to challenge his conviction for carrying a dangerous weapon [*See, generally*, Docs. 2-3]. Regardless, the Court notes that Petitioner concedes that he carried a gun with him to the meeting with Patton and used that gun to shoot Patton [*See, generally*, Doc. 11-9 p. 119]. Therefore, Petitioner's admissions would negate any habeas claim for relief on this conviction.

beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. The reviewing court must presume that the trier of fact resolved conflicting inferences of fact in favor of the prosecution and must defer to that resolution, because such a standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* Because both the AEDPA and the *Jackson* standard apply to insufficiency claims, this Court's review is doubly deferential. *See Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008).

### 1. First-degree murder

The TCCA addressed Petitioner's claim concerning his first-degree premeditated murder conviction on direct appeal as follows:

> Taken in the light most favorable to the State, the evidence shows that on June 13, 2006, Daniels believed the victim was responsible for shooting at Daniels' sister's house. Daniels, who was the O.G. of the Skyline Bloods, went to Emma Wheeler Homes and had Brock telephone the victim and tell the victim to come to the housing development. When the victim arrived, Sneed and Daniels went to the driver's side of the truck to speak with the victim while Brock went to the passenger side. At some point, Evans, a subordinate member of the Bloods who did not know the victim, arrived and stood at the truck bed. While Sneed was talking with the victim, Daniels left the driver's window, walked to Evans, and told Evans to "handle that shit Piru." Daniels showed his gun to Evans and ordered Evans to kill the victim. Evans pulled out his own gun, walked to the front of the truck, and fired nine or ten shots at the victim, striking him six times.
>
> Although Evans claims that the shooting was not planned, the evidence shows otherwise. Sneed testified that on the afternoon of the shooting, Brock told him to come to Emma Wheeler Homes because something was about to happen to Sneed's family. Evans testified that he used a rag to load his gun and keep fingerprints off the bullets because he realized "something was going on." Brock testified that just before the shooting, he listened to the appellants' conversation because "instinct" told him something was about to happen. Their testimony, combined with the following facts, demonstrate premeditation: (1) Daniels had a motive to retaliate against the victim for shooting at his sister's house; (2) the appellants procured weapons; (3) Evans used a deadly weapon upon the unarmed victim; (4) Evans cruelly shot the unarmed victim in the upper body repeatedly when the victim had come to the housing development only to speak with Daniels and clear his name; (5) Evans shot the victim multiple times; (6) Evans prepared before the killing to conceal the crime by using the bandana to load the gun and by wrapping the gun in

13

a red rag; and (7) the appellants attempted to conceal the crime by fleeing from the scene and denying their involvement to the police. Arguably, Evans' distress after the killing weighs against a finding of premeditation. However, in the light most favorable to the State, Evans was distraught about killing the victim because he had learned the victim was Sneed's cousin, not because he had shot an innocent person. The evidence is more than sufficient to show that both of the appellants premeditated killing the victim.

*Evans I*, 2011 WL 3667722, at *10.

Tennessee defines first-degree premeditated murder as "the premeditated and intentional killing of another person." Tenn. Code Ann. § 39-13-202(a)(1). A premeditated killing occurs "after the exercise of reflection and judgment." Tenn. Code Ann. § 39-13-202(d). Whether premeditation has been established is a jury question. *State v. Davidson*, 121 S.W.3d 600, 614 (Tenn. 2003). The jury may infer premeditation from the manner and circumstances surrounding the murder. *State v. Bland*, 958 S.W.2d 651, 660 (Tenn. 1997). The Tennessee Supreme Court has previously stated that the following factors are among those that may be used by a jury to infer premeditation: evidence of obtaining a weapon, the use of a deadly weapon upon an unarmed victim, infliction of many wounds, destruction of incriminating evidence, and preparation before the murder to conceal the crime. *State v. Nichols*, 24 S.W.3d 297, 302 (Tenn. 2000).

Here, Petitioner conceded he murdered Patton on Daniels' order. He used a rag to load his gun in order to avoid leaving fingerprints on the bullets. Petitioner then carried that gun to a meeting with Patton and, upon Daniels' order, pulled out the weapon, walked to the front of Patton's truck, and fired nine or ten shots at Patton, who was unarmed. Petitioner then fled the scene with Daniels. It is not unreasonable to conclude, based on the record evidence, that there was sufficient evidence of premeditation to sustain the jury's verdict.

### 2.    Conspiracy to commit first-degree murder

Petitioner also challenges the sufficiency of the evidence to sustain his conviction for conspiracy to commit first-degree murder. Tennessee law defines "conspiracy" as an agreement

between two or more people who possess the culpable mental state required for the predicate offense and who act to promote or facilitate commission of the predicate offense. Tenn. Code Ann. § 39-12-103(a). Evidence, including Petitioner's testimony, was admitted that showed Petitioner was told by his co-defendant to kill Patton. *Evans I*, 2011 WL 3667722, at *11. Accordingly, it is not unreasonable to determine that a juror could conclude that Petitioner and his co-defendant conspired with each other to commit first-degree murder.

### 3. Duress

Petitioner maintains that his convictions cannot be sustained, because he was under duress to murder Patton [Doc. 3 p. 4]. While Petitioner testified at trial that he had "no choice" but to kill Patton, he later testified that he could have refused to do so. The jury decided this issue in the State's favor, and this Court must defer to the jury's assessment of witness credibility. *Jackson*, 443 U.S. at 319.

Additionally, the defense of duress "is unavailable to a person who intentionally, knowingly, or recklessly becomes involved in a situation in which it was probable that the person would be subjected to compulsion." Tenn. Code Ann. § 39-11-504(b); *see also United States v. Campbell*, 675 F.2d 815, 820 (6th Cir. 1982) ("Nor is the defense of duress available to a person who contends that he has joined either voluntarily or under compulsion of a criminal organization. . . even if he asserts that he has acted under the orders of that organization in fear of his life"). Petitioner was an admitted gang member who placed himself in a position to kill by attending the meeting that resulted in Patton's murder, and therefore, he cannot claim duress.

In sum, Petitioner has failed to demonstrate that the decision rejecting this claim is contrary to, or an unreasonable application of, the *Jackson* standard, nor has he demonstrated that it is based upon an unreasonable determination of facts in light of the evidence presented. Petitioner is not entitled to relief on Claim II.

### C.    Motions to Sever

In Claim III, Petitioner alleges that the trial court erred by refusing to grant his motion to sever his trial from Daniels' trial [Doc. 2 p. 5].  Petitioner argues that "the trial court erred by refusing to grant his motion for a severance because [the] defenses were antagonistic and because security concerns warranted separate trials" [*Id.*].  The TCCA addressed this claim on direct appeal as follows:

> The appellants contend that their defenses were not only mutually antagonistic but were mutually exclusive because the jury had to believe either Evans' defense of duress or Daniels' defense that Evans acted alone. They also contend that the trial court's failure to order separate trials subjected the jury to prejudicial security measures and "theatrics" by the State. However, neither appellant has cited to any specific examples of how they were prejudiced by being tried jointly. Moreover, the evidence introduced against them at trial would have been admissible against them in separate trials, including Evans' testimony against Daniels. "[A] severance need not be granted where the evidence which was introduced could have been admitted against [the defendant] in a separate trial." *State v. Little*, 854 S.W.2d 643, 648 (Tenn. Crim. App. 1992). Therefore, we conclude that the trial court did not err by denying their motions to sever.

*Evans I*, 2011 WL 3667722, at *12.

In *Bruton v. United States*, the Supreme Court held that a defendant's right to cross-examination of witnesses is violated when a non-testifying co-defendant's confession that inculpates the defendant is introduced into evidence at a joint trial, even if the jury is instructed to consider the confession only as evidence against the co-defendant.  391 U.S. 123, 137 (1968). Here, Daniels' confession was admitted into evidence at the joint trial.  *See Evans I*, 2011 WL 3667722, at *7.  However, the State played a redacted version of Daniels' statement to the jury, which did not implicate or contain any mention of Petitioner.  *Id.*  Due to the statement's redaction that removed any mention of Petitioner and his involvement in the murder, the TCCA did not unreasonably apply *Bruton* when it denied relief.  Further, Petitioner's conclusory allegation that "security concerns warranted separate trials" warrants no relief.  *See Prince*, 78 F. App'x at 442 ("Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief.").

Therefore, the Court finds that the TCCA's decision rejecting this claim is not contrary to, nor is it an unreasonable application of, *Bruton*, and it is not based on an unreasonable determination of facts in light of the evidence presented. Petitioner is not entitled to relief on Claim III.

### D. Procedurally Defaulted Claims

#### 1. Ineffective assistance for failing to argue duress at trial

In Claim I(1), Petitioner alleges a claim of ineffective assistance of trial counsel based on trial counsel's alleged failure to argue a duress defense at Petitioner's trial [Doc. 2 p. 4]. In State court, Petitioner presented the TCCA with a claim that trial counsel rendered ineffective assistance in failing to call a psychological expert to support his duress defense, but he did not present an ineffectiveness claim based on the failure to argue duress [*See* Doc. 11-25 p. 10-18].

A claim must be presented to the TCCA in order to meet the AEDPA's exhaustion requirement. *See Adams v. Holland*, 330 F.3d 398 (6th Cir. 2003); *see also* Tenn. S. Ct. R. 39 (establishing presentation of claim to TCCA is sufficient to exhaust State remedies). Therefore, by failing to pursue this claim to the TCCA, Petitioner failed to fully exhaust this claim. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (holding that proper exhaustion requires petitioner to pursue claim through "one complete round of the State's established appellate review process"). Because there is no avenue by which Petitioner may now obtain State-court review of this claim, it is technically exhausted but procedurally defaulted by Tennessee's applicable statute of limitation and prohibition against successive petitions. *See Jones v. Bagley*, 696 F.3d 475, 483 (6th Cir. 2012) ("When a petitioner has failed to present a legal issue to the state courts and no state remedy remains available, the issue is procedurally defaulted."); *see also* Tenn. Code Ann. § 40-30-102(a) (one-year limitation period) and § 40-30-102(c) ("one petition" rule).

Petitioner has not argued that that a fundamental miscarriage of justice would result from failure to review the claims, and the Court finds that exception to his procedural default inapplicable. Therefore, the Court considers whether Petitioner has established the requisite cause and prejudice for the default. The Court notes, that in some circumstances, the ineffective assistance of post-conviction counsel may provide cause to excuse the default of a substantial ineffective-assistance of trial counsel claim. *See Martinez v. Ryan*, 566 U.S. 1, 9, 14 (2012).

In this case, however, Petitioner cannot avail himself of the *Martinez* exception to secure review of this claim, as this claim was raised in the initial collateral-review proceeding but defaulted on post-conviction appellate review [*Compare* Doc. 11-20 p. 55, 81 *with* Doc. 11-25]. *See West v. Carpenter*, 790 F.3d 693, 698 (6th Cir. 2015) (finding ineffectiveness of post-conviction counsel sufficient to establish "cause" does not apply "at post-conviction appellate proceedings because those proceedings are not the 'first occasion' at which an inmate could meaningfully raise an ineffective-assistance-of-trial-counsel claim") (citation omitted). Accordingly, this claim is defaulted and barred from review.

Moreover, Petitioner's claim is not substantial. As the Court has already noted, the record reflects that trial counsel did raise the defense of duress at trial. Therefore, Petitioner has not demonstrated an entitlement to relief on this claim, and it will be dismissed.

### 2. Security measures

In Claim IV, Petitioner alleges that the trial court "erred by using extreme and unnecessary security measures that prejudiced the jury against him" [Doc. 2 p. 5]. This claim was found to have been waived on direct appeal due to counsel's failure to lodge a contemporaneous objection under Tennessee Rule of Appellate Procedure 36. *See Evans I,* 2011 WL 3667722, at *12.

As the Court noted above, failure to comply with a State procedural rule will foreclose habeas review of a claim if the decision of the State court rested on the State-law rule, and it is

independent of the federal question and adequate to support the judgment. *See, e.g., Walker v. Martin*, 562 U.S. 307, 315 (2011). To determine whether a habeas claim is precluded by the failure to observe a State procedural rule, a reviewing court must determine: (1) whether an applicable rule exists with which the petitioner failed to comply; (2) whether the State courts actually enforced the rule; (3) whether the rule is an adequate and independent State rule on which the State can rely to foreclose review of the federal claim; and (4) whether cause exists for the petitioner's failure to follow the rule, and that he was prejudiced by the alleged error. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

The Court finds that the waiver rule articulated in Tennessee Rule of Appellate Procedure 36(a) and relied upon by the TCCA constitutes a firmly-established and regularly-enforced independent rule that precludes this Court's review of the instant claim. *See Hugueley v. Westbrooks*, No. 09-1181-JDB-EGB, 2017 WL 3325008, at *23 (W.D. Tenn. Aug. 3, 2017); *see also State v. Willis*, 496 S.W.3d 653, 755 (Tenn. 2016) (waiving challenge to prosecutorial comments where defendant failed to object at trial); *State v. Armstrong*, 256 S.W.3d 243, 249 (Tenn. 2008) (noting failure to contemporaneously object to prosecutor's comments waives challenge). Therefore, the rejection of this claim by the State court rested on a State-law rule independent of the federal question and adequate to support the judgment. *See Coleman*, 501 U.S. at 738; *Walker*, 562 U.S. at 315. Petitioner has not acknowledged his default of this claim. Thus, he has not demonstrated cause and prejudice for the default, or that a fundamental miscarriage of justice would result from failure to consider this claim. Accordingly, this claim will be dismissed.

### 3. Perjury by State's gang expert

In Claim V, Petitioner alleges that the trial court "erred by failing to grant [Petitioner's motion] for a new trial because the State's gang expert committed perjury" [Doc. 2 p. 5]. On direct appeal, Petitioner argued that a State witness testifying as a gang expert testified falsely that she

had a college degree. *Evans I*, 2011 WL 3667722, at *12. However, Petitioner presented this claim to the State court solely on the basis of State law. [*See* Doc. 11-15 p. 29-33]. Therefore, Petitioner did not exhaust his federal claim in State court. *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (holding that a necessary component of the exhaustion doctrine is that the federal claim must be "fairly present[ed]" to the State courts prior to seeking relief in the federal courts).

The Sixth Circuit has held that "[w]hile a petitioner need not cite chapter and verse of constitutional law, general allegations of the denial of rights to a fair trial and due process do not fairly present claims that specific constitutional rights were violated." *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006) (internal quotations omitted). Here, Petitioner did not present the TCCA with a federal claim for review. Because there is no avenue by which Petitioner may now obtain State-court review of this claim, it is technically exhausted but procedurally defaulted. *See Jones v. Bagley*, 696 F.3d 475, 483 (6th Cir. 2012) ("When a petitioner has failed to present a legal issue to the state courts and no state remedy remains available, the issue is procedurally defaulted."); *see also* Tenn. Code Ann. § 40-30-102(a) (one-year limitation period); Tenn. Code Ann. § 40-30-102(c) ("one petition" rule); Tenn. Code Ann. § 40-30-106(g) ("A ground for relief is waived if the petitioner . . . failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented.").

Petitioner has not acknowledged the default of this claim, and therefore, he has failed to demonstrate an exception to the procedural default rule. Nonetheless, the Court notes that in evaluating Petitioner's claim of perjury, the TCCA concluded, based on the record, that Petitioner was not prejudiced because the false testimony did not affect the jury's verdict. *Evans I*, 2011 WL 3667722, at *12. Therefore, Petitioner has not demonstrated cause and prejudice for the default, or that a fundamental miscarriage of justice would result from failure to consider this claim. Accordingly, this claim will be dismissed.

## IV.    CERTIFICATE OF APPEALABILITY

A petitioner must obtain a certificate of appealability ("COA") before he may appeal this Court's decision denying federal habeas relief.  28 U.S.C. § 2253(c)(1).  A COA will not issue unless a petitioner makes "a substantial showing of the denial of a constitutional right" of any claim rejected on its merits, which a petitioner may do by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  To obtain a COA on a claim that has been rejected on procedural grounds, a petitioner must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack*, 529 U.S. at 484.  Applying this standard, the Court concludes that a COA should be denied in this case.

## V.    CONCLUSION

Petitioner has failed to demonstrate an entitlement to federal habeas relief.  Therefore, his petition for a writ of habeas corpus will be **DENIED**, and this action will be **DISMISSED WITH PREJUDICE**.  A certificate of appealability from this decision will be **DENIED**.

Further, the Court will **CERTIFY** that any appeal from this action would not be taken in good faith and would be totally frivolous.  Fed. R. App. P. 24.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**


_____*/s/ Harry S. Mattice, Jr.*_____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE